Filed 6/20/22  Teague v. National General Ins. CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

|  |  |
|---|---|
| DARRELL TEAGUE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>NATIONAL GENERAL INSURANCE COMPANY,<br><br>  Defendant and Appellant. | F083543<br><br>(Super. Ct. No. BCV-18-101946 BCB)<br><br>**OPINION** |

THE COURT[*]

APPEAL from a judgment of the Superior Court of Kern County.  Bernard C. Barmann, Judge.

MacDonald & Cody and Bryan M. Thomas for Defendant and Appellant.

Law Offices of Brian C. Gonzalez, Brian C. Gonzalez; Law Offices of Robert M. Cohen and Robert M. Cohen for Plaintiff and Respondent.

-ooOoo-

An insurance company and its insured dispute the amount of coverage provided for injuries suffered by the insured in a collision with a hit-and-run driver.  An arbitrator awarded the insured $267,000.  The trial court confirmed the award and entered

_____

[*]      Before Franson, Acting P. J., Smith, J. and Snauffer, J.

judgment. On appeal, the insurance company contends the award should have been corrected to $250,000, which is the limit of the uninsured motorist coverage provided in its policy.

Under California's constitutional doctrine of reversible error, a judgment of the lower court is presumed correct and, thus, the appellant must affirmatively demonstrate prejudicial error. One of the arguments raised by the insured during the arbitration was that the $1,000,000 umbrella he purchased extended his uninsured motorist coverage. The insurance company's appellate briefing did not directly address this argument. It ignored the existence of the umbrella coverage. As a result, the insurance company has not (1) established how the umbrella coverage and the uninsured motor coverage relate to one another and (2) affirmatively demonstrated that the umbrella coverage did not extend the uninsured motorist coverage. Without such a demonstration, we cannot conclude that the trial court erred in confirming the arbitration award.

We therefore affirm the judgment.

## BACKGROUND

### *The Insurance Policy*

In 2016, plaintiff Darrell Teague and his wife renewed their automobile insurance with Personal Express Insurance Company. Defendant National General Insurance Company is the successor of Personal Express Insurance Company. The declarations page from the policy listed the Teagues as insured drivers and their Chevrolet Silverado as the insured vehicle. The schedule of coverages and limits includes an entry for "Uninsured / Underinsured Motorist Bodily Injury" with limits of "$250,000 Each Person / $500,000 Each Accident" at a premium of $40.00. The schedule also includes an entry for "Umbrella" with a limit of $1,000,000 at a premium of $126.00. Nothing in the declarations page indicates the umbrella coverage is limited *to liability* incurred by the insured drivers or, more specifically, that it does not extend to the uninsured motorist coverage.

2.

Part C of the policy sets forth the terms of the uninsured motorist coverage. Three provisions in part C address the limit on liability, other insurance, and arbitration.

First, the "LIMIT OF LIABILITY" section in part C includes a provision which states: "The limit of liability shown in the Declarations for each person for Uninsured Motorists Coverage is our maximum limit of liability for all damages, including …." National General Insurance contends that this provision along with the limit set forth on the declarations page make clear that $250,000 is the maximum amount of its liability for damages caused by an uninsured motorist.

Second, the "OTHER INSURANCE" section in part C begins by stating the following:

> "If there is other applicable insurance available under one or more policies or provisions of coverage that is similar to the insurance provided under this Part of the policy: [¶] 1. Any recovery of damages under all such policies or provisions of coverage may equal but not exceed the highest applicable limit for any one vehicle under any insurance providing coverage on either a primary or excess basis."

The parties' appellate briefing and their papers included in the clerk's transcript do not mention this provision and do not address whether the umbrella coverage is a "provision[] of coverage that is similar to the insurance provided under this Part of the policy."

Third, the "ARBITRATION" section of part C includes a paragraph designated C.2. that provides:

> "The amount of damages. This applies only if the amount does not exceed the minimum limit for bodily injury liability specified by the financial responsibility law of the state in which 'your covered auto' is principally garaged. If the amount exceeds that limit, either party may demand the right to a trial. This demand must be made within 60 days of the arbitrators' decision. If this demand is not made, the amount of damages agreed to by the arbitrators will be binding."

Teague contends this provision applies to the $267,000 arbitration award and, because National General Insurance did not demand a trial within 60 days of the arbitrator's decision, the amount of damages awarded in that decision is binding. National General Insurance's appellate briefing omits any reference to this paragraph of the arbitration agreement contained in part C.

The insurance policy included in the appellate record consists of a declarations page and 13 additional pages. The policy does not contain a part that sets forth the terms of the umbrella coverage purchased by the Teagues. Also, National General Insurance's appellate briefing does not refer to any writing (whether part of the policy or a separate document) that sets forth the terms of the umbrella coverage. Our own independent review of the record did not locate any such document. As a result, the exact terms of the umbrella coverage (including its scope) remain a mystery to this court.

*The Accident*

On August 17, 2016, Teague was driving home in the Silverado. While stopped at a red light, the Silverado was struck from behind by a Dodge Caravan, which then left the scene of the accident. Teague contended he sustained bodily injuries in the hit-and-run accident and filed an uninsured motorist claim with National General Insurance.

*The Lawsuit and Arbitration*

On August 9, 2018, Teague filed a complaint against National General Insurance. Arbitration proceedings were held before a retired superior court judge on March 10 and 11, 2021. On April 15, 2021, the arbitrator issued a 50-page decision that awarded Teague the sum of $267,000. At lines 14 and 15 of the second page of the arbitration decision, the arbitrator addressed the dispute that is the subject of this appeal by stating: "The amount of the policy limits is disputed. This is an issue that is not a subject for

4.

determination by the Arbitrator."[1]  In light of this statement and reading the arbitration decision as a whole, we conclude the arbitrator did not decide that the coverage limitations exceeded $250,000.  The statements made at page 33, lines 18 through 21, and page 34, lines 20 through 25, of the arbitration decision simply are the arbitrator's description of Teague's contentions.  Those descriptions are not the arbitrator's determination as to what policy limits, if any, apply.

*Petition to Confirm Arbitration Award*

On September 2, 2021, Teague filed a petition to confirm the arbitration award with the trial court.  National General Insurance filed an opposition that asserted the contractually agreed-upon uninsured motorist limits of $250,000 applied and, therefore, the trial court should correct the arbitrator's award pursuant to its authority under Code of Civil Procedure section 1286.6.[2]  Teague filed a reply that asserted the insurance policy provided $1,250,000 in coverage for the subject claim—that is, $250,000 in uninsured motorist coverage and an additional $1,000,000 under the umbrella policy.

On September 30, 2021, a hearing was held on the petition to confirm the arbitration award.  After announcing its tentative ruling and hearing the arguments of counsel, the trial court granted the motion and directed Teague's attorney to prepare an order.  A reporter's transcript of the hearing is not part of the appellate record.

On October 14, 2021, the trial court signed and filed a judgment implementing its order confirming the arbitration award.  The judgment held National General Insurance liable to Teague for the sum of $267,000 together within interest at 10 percent from April 15, 2021, the date of the arbitration award.

---

[1]    Neither side's appellate briefing mentions this paragraph of the arbitrator's decision.

[2]    Unlabeled statutory references are to the Code of Civil Procedure.

## DISCUSSION

### I. PRINCIPLES OF APPELLATE REVIEW

National General Insurance contends the trial court erred in confirming the arbitration award and in denying its request to correct the award because the award exceeded the arbitrator's power, which was defined by the contract limits contained in the agreement to arbitrate. (See § 1285.2 [response to petition may request the court to correct the award].) Under section 1286.6, subdivision (b), a trial court "shall correct the award and confirm it as corrected" if it determines "[t]he arbitrators exceeded their powers but the award may be corrected without affecting the merits of the decision upon the controversy submitted."

#### A. Standard of Review

The proceedings below occurred before the trial court and before an arbitrator. Consequently, we describe the standard of review applied to the trial court's decision and the standard of review applied to the arbitrator's decision.

The parties agree the trial court's determination of whether the arbitrator exceeded his powers is a question of law subject to de novo review on appeal. They also agree that, to the extent that a trial court decision is based on findings of disputed facts, those findings are subject to review under the substantial evidence standard.

Insofar as our inquiry addresses the *arbitrator's* resolution of questions of law or fact, we apply a highly deferential standard. (*Cooper v. Lavely & Singer Professional Corp.* (2014) 230 Cal.App.4th 1, 12.) The principle of arbitral finality, practical considerations, and our Supreme Court's decisions "all dictate that arbitrators, unless expressly restricted by the agreement or the submission to arbitration, have substantial discretion to determine the scope of their contractual authority to fashion remedies, and that judicial review of their awards must be correspondingly narrow and deferential." (*Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362, 376.)

6.

In this appeal, the foregoing principle about deference to an arbitrator's determination about the scope of their authority regarding remedies is significant because the arbitrator decided the dispute as to the amount of the policy limits presented an issue that was *not* a subject for his determination. In other words, the arbitrator determined the amount of the award and left the question of the policy limits open—that is, left it to be decided in subsequent proceedings. In the circumstances of this case, those subsequent proceedings were initiated when Teague filed his petition to confirm the arbitration award in the trial court.

Based on our high court's conclusions about the deference due an arbitrator's power to determine the scope of their contractual authority, we defer to (i.e., accept) the arbitrator's determination that the question of policy limits was not an issue for him to resolve. Accordingly, our review proceeds to the issue of whether the trial court properly resolved the question about policy limits. That issue leads us to some basic principles of appellate practice and procedure, which follow.

B.    Appellant's Burden of Demonstrating Error

" 'A judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown. This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.' " (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) A necessary corollary of the presumption of correctness and the requirement that appellants affirmatively demonstrate error is that if the record is inadequate for meaningful review, the issue must be resolved against the appellant. (*Jameson v. Desta* (2018) 5 Cal.5th 594, 609.) Applying these principles to this appeal, we presume the trial court correctly determined the award of $267,000 did not exceed the insurance policy's coverage limits. As a result, National General

7.

Insurance has the burden of affirmatively demonstrating the trial court erred in this regard.

## II. APPELLANT HAS NOT SHOWN THE TRIAL COURT ERRED

The main obstacle for this court in addressing the amount of coverage provided for damages inflicted by an uninsured motorist is the absence of information about the umbrella coverage purchased by the Teagues. The declarations page contains only a single line about the umbrella coverage. It is identified simply as "Umbrella" with a limit of $1 million and the premium charged was $126.00.

After the declarations page, the "PERSONAL AUTO POLICY" consists of 13 pages. We infer no pages were omitted because the first page is numbered "Page 1 of 13" and the following 12 pages list their number and repeat "of 13." The policy begins with an "AGREEMENT" that states in full: "In return for payment of the premium and subject to all the terms of this policy, we agree with you as follows:" The next section is labeled "DEFINITIONS." After the definitions, the policy sets forth parts A through F. None of these parts address the umbrella coverage. As a result, the only information about the umbrella coverage available to this court is the single line on the declarations page. Consequently, the question about the scope of the insurance policy's coverage can be rephrased as whether the trial court misinterpreted that single line of the insurance policy after, of course, considering the policy as a whole.

The usual rules of contract interpretation apply to insurance policies. (*Hervey v. Mercury Casualty Co.* (2010) 185 Cal.App.4th 954, 961.) As a result, the trial court's interpretation, like this court's interpretation, is governed by the rules of contract law, subject to specific rules designed for insurance policies. When, as here, the facts are undisputed (i.e., the parties presented no extrinsic evidence as to the policy's meaning), the interpretation of the policy, including whether it is ambiguous, is a question of law. (*Id.* at pp. 962–963.)

8.

" 'The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties.' [Citations.] 'Such intent is to be inferred, if possible, solely from the written provisions of the contract.' [Citations.] 'If contractual language is clear and explicit, it governs.' [Citation.]" (*State of California v. Continental Ins. Co.* (2012) 55 Cal.4th 186, 195.) Alternatively, if there is an ambiguity in the language of the insurance contract, courts generally interpret the coverage clauses broadly and resolve ambiguities in favor of coverage. (*Wells Fargo Bank v. California Ins. Guarantee Assn.* (1995) 38 Cal.App.4th 936, 943.) This approach protects the objectively reasonable expectations of the insured. (*Ibid.*) The rationale for the foregoing principles is that the insurance company usually drafts policy language and the insured has little or no meaningful opportunity to bargain for modifications. (*Ibid.*) Accordingly, the insurance company, as the drafter of the policy, is held responsible for ambiguous policy language. (*Ibid.*; see Civ. Code, § 1654 [uncertain contractual language should be interpreted against party who caused the uncertainty].)

First, we resolve the threshold legal question of ambiguity. We conclude the policy language contained in the appellate record is reasonably susceptible to more than one meaning on the specific question of whether the umbrella coverage extended the uninsured motorist coverage of $250,000. In other words, it is unclear whether the umbrella coverage only applies to *liability* that the Teagues might have incurred or, alternatively, whether it extends all aspects of the policy, including the protection provided to the Teagues against damages inflicted by uninsured motorists.

Second, we resolve the ambiguity in favor of Teague and conclude that the umbrella coverage extended the limits of the uninsured motorist coverage. This interpretation is compelled by the rule of law that ambiguities relating to coverage are resolved in favor of the insured. (*Wells Fargo Bank v. California Ins. Guarantee Assn.*, *supra*, 38 Cal.App.4th at p. 943.) Consequently, the trial court correctly confirmed the arbitration award.

## III.   TEAGUE'S REQUEST FOR SANCTIONS

A heading in Teague's respondent's brief contends that National General Insurance brought a frivolous appeal.  Teague argues the appeal was brought to cause delay and counsel for National General Insurance engaged in a pattern of late filing and rule violations to extend the delay caused by the frivolous appeal.  Teague contends that, under these circumstances, this court may impose sanctions pursuant to section 907 and California Rules of Court, rule 8.276.[3]

Teague's request for sanction refers to an award of costs on appeal.  Teague may have used the term costs in the broadest sense, which would include the reasonable attorney fees.  This interpretation is supported by the fact that Teague, as the prevailing party on appeal, is entitled to costs pursuant to California Rules of Court, rule 8.278(a)(2) unless, in the interest of justice, this court orders otherwise.  This rule renders a narrow request for costs superfluous.

Consequently, we infer that Teague is requesting that the imposition of sanctions in an amount to compensate his counsel for the time reasonably incurred in this appeal.  We deny the request for sanctions because it is procedurally improper.  (See *Symmonds v. Mahoney* (2019) 31 Cal.App.5th 1096, 1114.)  A request for sanctions on appeal must be raised in a separate motion.  (Cal. Rules of Court, rule 8.276(b)(1).)  "Sanctions cannot be sought in the respondent's brief."  (*Cowan v. Krayzman* (2011) 196 Cal.App.4th 907,

---

[3]   Section 907 provides:  "When it appears to the reviewing court that the appeal was frivolous or taken solely for delay, it may add to the costs on appeal such damages as may be just."

California Rules of Court, rule 8.276 states: "(a) **Grounds for sanctions** On motion of a party or its own motion, a Court of Appeal may impose sanctions, including the award or denial of costs under rule 8.278, on a party or an attorney for: [¶] (1) Taking a frivolous appeal or appealing solely to cause delay; [¶] (2) Including in the record any matter not reasonably material to the appeal's determination; [¶] (3) Filing a frivolous motion; or [¶] (4) Committing any other unreasonable violation of these rules."

919.) In addition, Teague failed to "include a declaration supporting the amount of any monetary sanction sought." (Cal. Rules of Court, rule 8.276(b)(1).)

## DISPOSITION

The judgment is affirmed. Respondent Teague shall recover his costs on appeal.